**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
EUNICE KIPPINS,

                Plaintiff,                    **REPORT AND**
                                                                      **RECOMMENDATION**
           -against-                          **CV 19-3120 (SJF) (ARL)**

AMR CARE GROUP, INC. and JILL SMITH
*Individually*,

                Defendants.
------------------------------------------------------------X
**LINDSAY, Magistrate Judge:**

        The plaintiff, Eunice Kippins ("Kippins"), commenced this action against the defendants, AMR Care Group, Inc. ("AMR") and Jill Smith ("Smith") (collectively, "the defendants"), on May 24, 2019, pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17, and the New York State Human Rights Law, seeking damages to redress the injuries she says she suffered as a result of being exposed to retaliation, race discrimination and wrongful termination. Before the Court, on referral from District Judge Feuerstein, is the motion of the defendants to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons set forth below, the undersigned respectfully recommends that the motion be granted but that Kippins be given leave to amend the complaint.

## BACKGROUND

        The following facts are drawn from the Complaint and are accepted as true for purposes of the instant motion. *Samuels v. Air Transp. Local 504*, 992 F.2d 12, 15 (2d Cir. 1993). These facts, however, do not constitute findings of fact by the Court. *See Colvin v. State University College at Farmingdale*, No. 13-CV-3595 (SJF)(ARL), 2014 U.S. Dist. LEXIS 85678, 2014 WL 2864224, at *1 n.1 (E.D.N.Y. June 19, 2014).

### A. The Parties

Kippins is an African American woman who resides in New Hyde Park, New York. Compl. ¶ 8. AMR is a company that provides assistance to people with physical or cognitive disabilities and the elderly. *Id.* ¶ 9. In April 2016, AMR hired Kippins as a Companion Assistant. *Id.* ¶ 12. Kippins' duties included ensuring the safety of clients and helping with their daily routines, like putting away groceries and opening packages and mail. *Id.* ¶ 13. Kippins alleges that she was supervised by the defendant Smith, AMR's Coordinator of Companion Staff, and Ann Retch, the owner of the agency. *Id.* ¶¶ 10-1, 15-7. Smith was responsible for working with companions and matching them to clients. *Id.* Smith had hiring and firing authority. *Id.* ¶ 18.

According to Kippins, she received very favorable reviews during her tenure with AMR including a positive evaluation from Smith. *Id.* ¶¶ 19, 21. Kippins says was never late or absent from work and even took on extra shifts for workers who were late, quit or did not report to work. *Id.* ¶ 20.

### B. The Incident with Ms. Plotkins

At some point during her employment, Kippins was assigned to provide home care for Mai Plotkins ("Plotkins"). *Id.* ¶ 22. According to Kippins, she was the only caregiver that made Plotkins comfortable. *Id.* Kippins claims that most of the employees assigned to Plotkins did not care for her health and well-being, fought with her, failed to stock her home with food and allowed her to drink excessive amounts of alcohol. *Id.* ¶ 23. In addition, Kippins claims that other aids were accused of stealing from the Plotkins' home. *Id.* In contrast, Kippins says she was instrumental in keeping both Plotkins and her family satisfied because of the quality and quantity of care that she provided as a steady worker. *Id.* ¶ 24.

According to the complaint, at some point, Smith asked Kippins to take on Plotkins' case full time. *Id.* Kippins says she did not want the assignment because there had already been "multiple incidents surrounding off hour telephone calls [and] a revolving door of unprofessional staff and problems" associated with Plotkins' care. *Id.* ¶ 25. Specifically, Kippins alleges that nonparty Kathy Waters ("Waters"), who is not employed by AMR, and who was serving as a liaison for the Plotkins family, had suspended AMR's nurse services, an outreach manager, a social worker and a care manager. *Id.* Kippins also claims that there were concerns about "the neglect [of] and likeliness of danger" to Plotkins. *Id.* During the term of her employment, Kippins says she was required to direct all concerns and complaints about Plotkins to Waters. *Id.* ¶ 26.

On July 31, 2017, Kippins noticed that Plotkins' health was failing. *Id.* ¶ 29. She contacted Smith for assistance but Smith told her to forward her concerns directly to Waters. *Id.* ¶ 26. As instructed, Kippins contacted Waters and the following day, Plotkins received a new medication. *Id.* ¶¶ 32-3. Kippins alleges that she then advised Smith about the new medication. *Id.* ¶ 34. Smith responded by sending her an email stating that Companion Assistants were not to handle or give clients their medications. *Id.* ¶ 35.

That same day, Kippins learned that Plotkins had an issue with her morning Companion Assistant. *Id.* ¶ 36. To this end, Kippins claims that she received a telephone call from Laura Giuntas ("Giuntas"), AMR's Outreach/Client Manager. *Id.* ¶¶ 37-8. Giuntas asked Kippins to go to Plotkins' home and obtain information about the new medication. *Id*. ¶ 40. In fact, Giuntas told Kippins to open the boxes of medication and read to her the prescription while she waited on the phone. *Id*. Giuntas then instructed Kippins on what medication to give to

3

Plotkins.[1]  *Id*. ¶ 43.  Despite the instruction from Giuntas, Kippins did not handle the medication or feed it to Plotkins.  *Id*. ¶ 44.  She says Plotkins unwrapped the coil and fed herself the medication.  *Id*. ¶ 45.

After her discussion with Giuntas, Kippins forwarded the message she had received from Smith prohibiting her from handling client medication to Waters.  *Id.* ¶ 47.  Over the course of the day, Waters and Kippins then exchanged several emails and spoke on the phone.  *Id.* ¶ 48.  According to Kippins, Waters became belligerent during those conversations and even referred to her as a "smart nigger."  *Id.* ¶ 50.  Kippins says she was shocked by the turn of events and complained to Smith about the racial slur.  *Id.* ¶ 52.  Kippins also sent a text message to Smith expressing concern for  Plotkins' well-being.  *Id.* ¶ 53.  On August 3, 2017, Kippins was terminated.  *Id.* ¶ 54.  No action was taken against Giuntas.  *Id.* ¶ 59.

    **C.**    **The EEOC Complaint**

On June 16, 2018, Kippins filed a Notice of Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC").  Pollack Dec. Ex. B.  On the first page of the Notice, Kippins checked off the boxes indicating that she was discriminated against on the basis of race and was seeking relief under Title VII of the Civil Rights Act.  *Id.*  Kippins also attached a 43 paragraph statement of facts to the Notice that mimic many of the facts set forth in the complaint.  *Id.*  As noted by the defendants, however, the Notice included one statement that is absent from the complaint.  Specifically, Kippins contends in the Notice that she later learned that Waters has sent an email to AMR indicating that she was "mentally unstable and should be fired."

---

[1] Kippins notes in the complaint that Giuntas is Caucasian and does not manage the staff.  *Id*. ¶ 38.  Kippins also alleges that Giuntas presented herself as a staff nurse during their conversation.  *Id*. ¶ 39.

4

D.     **The Parties' Contentions**

On October 2, 2019, the defendants moved to dismiss the complaint. The crux of their argument is that as noted in the EEOC complaint, Kippins was fired at Waters request because Waters considered Kippins to be mentally unstable. This, the defendants assert is proof that the defendants had a legitimate, non-discriminatory reason for Kippins termination. Kippins argues that the defendants' own policies should have protected her from discrimination by a third party put in charge of her day to day duties.

**DISCUSSION**

A.     **Standards of Law**

In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *See Swiatkowski v. Citibank*, 745 F. Supp. 2d 150, 162 (E.D.N.Y. 2010), *aff'd,* 446 F. App'x 360 (2d Cir. 2011) (citing *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir.2010)). The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), in which the court set forth a two-pronged approach to be utilized in analyzing a motion to dismiss. District courts are to first "identify [ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,'

5

but it asks for more than a sheer possibility that a [d]efendant has acted unlawfully." *Id*. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007) (internal citations omitted)).

### B. The Defendants' Arguments

As a threshold matter, the defendants argue that Kippins has "changed her position" with respect to the claims she submitted to the EEOC. Defs. Mem. at 4-5. Although it is true that Kippins did not reference Water's email seeking her termination in the complaint, the defendants' characterization of the EEOC Notice and the Complaint as taking contrary positions is incorrect. The EEOC Notice and the Complaint contain many of the same factual averments including the reference to the racial slur. Moreover, it is clear from the first page of the Notice that Kippins intended to assert a claim from race discrimination.

Second, the undersigned is not persuaded by the defendants' argument that the Water's email clearly proves that they had a legitimate, non-discriminatory reason for Kippins' termination in the context of a motion to dismiss. "'It is, of course, possible that the evidence will demonstrate that [AMR] had legitimate nondiscriminatory . . . reasons for its actions, but that is an issue to be decided on summary judgment, not at the motion to dismiss stage.'" *Amador v. All Foods, Inc*., No. CV 12-1715 SJF AKT, 2013 WL 1306305, at *8 (E.D.N.Y. Feb. 20, 2013), report and recommendation adopted, No. 12-CV-1715 SJF AKT, 2013 WL 1282353 (E.D.N.Y. Mar. 27, 2013)(citing *Reynoso v. All Foods, Inc*., No. 12–CV–1714, 2012 WL 6093784, at *11 (E.D.N.Y. Dec. 7, 2012)).

However, the Court does find merit in the defendants' argument concerning the sufficiency of the factual averments supporting the race discrimination claim. Indeed, the only reference to race in the complaint is Waters' alleged racial slur. *See* Compl. ¶ 56. However, Waters was not an employee of AMR. Nor is there any indication in the complaint that the

6

defendants had control over her. In fact, the only suggestion made by Kippins that AMR is somehow responsible for Waters' actions is Kippins' statement that the "[d]efendants' policy specifically aimed to protect [her] from discrimination by an employer or third party." Kippins also appears to suggest that because Waters, whose connection to Plotkin is never explained, acted as a liaison, she was somehow acting as her supervisor. The undersigned finds these allegations to be insufficient to set forth a *prima facie* case of race discrimination. Without more, Waters' comment cannot be imputed to AMR. *See White v. Pacifica Found.*, 973 F. Supp. 2d 363, 380 (S.D.N.Y. 2013)(citing *McLee v. Chrysler Corp.*, 109 F.3d 130, 137 (2d Cir. 1997) (evidence of racial bias on part of employee who did not make decision to fire plaintiff and was not consulted about decision, "provide[s] no basis for imputing to ... [the decision-maker] an invidious motivation for discharge"); *Hylton v. Norrell Health Care*, 53 F.Supp.2d 613, 618-19 (S.D.N.Y 1999) (employer nursing service not liable under Title VII for harassment of employee by patient's son).

     Similarly, the factual averments supporting Kippins' retaliation claim are insufficient. In a cursory fashion, Kippins states that her termination was related in time to her call to Smith complaining about Waters' comments. This generalized statement is insufficient to establish that Kippins engaged in protected activity. Moreover, the timing of the events is in question. As the defendants' note, Waters' request to AMR that Kippins be fired appears to have occurred after Kippins advised Smith that Water's had called her a "smart nigger." Accordingly, the undersigned respectfully recommends that the motion to dismiss be granted. The undersigned further recommends that the plaintiff be afforded an opportunity to file an amended complaint. *See Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001)("Leave to file an amended complaint "shall be freely given when justice so requires").

## OBJECTIONS

A copy of this Report and Recommendation is being electronically served by the Court on the parties. Any objections to this Report and Recommendation must be filed with the Clerk of the Court with a courtesy copy to the undersigned within 14 days. Failure to file objections within this period waives the right to appeal the District Court's Order. See 28 U.S.C. § 636(b)(1); Fed R. Civ. P 72; *Mejia v. Roma Cleaning, Inc.*, No. 17-3446, 2018 U.S. App. LEXIS 28235, 2018 WL 4847199, at *1 (2d Cir. Oct. 5, 2018) ("Plaintiff has waived any objections to the Magistrate's finding" by failing to timely object); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010); *Beverly v. Walker,* 118 F.3d 900, 902 (2d Cir. 1997).

Dated: Central Islip, New York
       March 20, 2020

                                    _____/s_____
                                    ARLENE R. LINDSAY
                                    United States Magistrate Judge