**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
EUNICE KIPPINS,

                            Plaintiff,                                 **REPORT AND**
                                                                                **RECOMMENDATION**
               -against-                                                          CV 19-3120 (SJF) (ARL)

AMR CARE GROUP, INC. and JILL SMITH
*Individually,*

                            Defendants.
------------------------------------------------------------X
**LINDSAY, Magistrate Judge:**

       The plaintiff, Eunice Kippins ("Kippins"), commenced this action against the defendants, AMR Care Group, Inc. ("AMR") and Jill Smith ("Smith") (collectively, "the defendants"), on May 24, 2019, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17, and the New York State Human Rights Law ("NYHRL"), seeking damages to redress injuries she says she suffered as a result of being exposed to retaliation, race discrimination and wrongful termination. On October 2, 2019, the defendants moved to dismiss the complaint. The motion was referred to the undersigned and, on March 20, 2020, the undersigned recommended that the motion be granted but that Kippins be given leave to amend the complaint. In anticipation of the district court's adoption of that recommendation, which occurred on April 21, 2020, Kippins filed an amended complaint. Now before the Court, on referral from District Judge Feuerstein, is the motion of the defendants to dismiss the amended complaint pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons set forth below, the undersigned respectfully recommends that the motion be denied.

# BACKGROUND

The following facts are drawn from the Amended Complaint and are accepted as true for purposes of the instant motion. *Samuels v. Air Transp. Local 504*, 992 F.2d 12, 15 (2d Cir. 1993). These facts, however, do not constitute findings of fact by the Court. *See Colvin v. State University College at Farmingdale*, No. 13-CV-3595 (SJF)(ARL), 2014 U.S. Dist. LEXIS 85678, 2014 WL 2864224, at *1 n.1 (E.D.N.Y. June 19, 2014).

### A. The Parties

Kippins is an African American woman who resides in New Hyde Park, New York. Am. Compl. ¶ 8. AMR is a company that provides assistance to people with physical or cognitive disabilities and the elderly. *Id.* ¶ 9. Smith is AMR's Director of Companion Services and is responsible for working with companions and matching them to clients. *Id.* ¶ 10. Kippins asserts that Smith has hiring and firing authority. *Id*. ¶ 19.

In April 2016, AMR hired Kippins as a Companion Assistant. *Id.* ¶ 12. Kippins' duties included ensuring the safety of clients, helping with their daily routines, like putting away groceries and opening packages and mail, and planning outside activities. *Id.* ¶¶ 13-4. Kippins alleges that during her tenure she was supervised by Smith and Ann Retch, the owner of AMR. *Id.* ¶¶ 15-7. According to Kippins, she received very favorable reviews during her employment, including at least one positive evaluation from Smith. *Id.* ¶¶ 20, 23. Kippins says she was never late or absent from work and even took on extra shifts for workers who were late, quit or did not report to work. *Id.* ¶¶ 21-2.

### B. The Incident with Ms. Plotkins

At some point, Kippins was assigned to provide home care for Mai Plotkins ("Plotkins"). *Id.* ¶ 24. According to Kippins, she was the only caregiver that made Plotkins comfortable. *Id.* ¶ 25. Kippins claims that most of the employees assigned to Plotkins did not care for her health

2

and well-being, fought with her, failed to stock her home with food and allowed her to drink excessive amounts of alcohol.  *Id.* ¶¶ 26-7.  In addition, Kippins claims that other aids were accused of stealing from the Plotkins' home.  *Id.* ¶ 28.   In contrast, Kippins says she was instrumental in keeping both Plotkins and her family satisfied because of the quality and quantity of care that she provided as a steady worker.  *Id.* ¶ 31.

Indeed, Smith had asked Kippins to take on Plotkins' case full time.  *Id.* ¶ 32.  Kippins claims she was not interested in doing so because there had already been multiple incidents associated with Plotkins' care including "off hour telephone calls [and] a revolving door of unprofessional staff and problems." *Id.* ¶ 33.  In addition, Kippins alleges that nonparty Kathy Waters ("Waters"), who is not employed by AMR, but was serving as a "fiduciary" for Plotkin's estate, had a history of initiating the suspension of AMR's nurse services, an outreach manager, a social worker and a care manager.  *Id.*  Finally, Kippins did not want to accept the full time assignment to Plotkins because there were already concerns about "the neglect [of] and likeliness of danger" to Plotkins.  *Id.*

Nonetheless, Kippins it appears continued to work with Plotkins and, on July 31, 2017, Kippins noticed that Plotkins' health was failing.  *Id.* ¶ 46.  She contacted Smith for assistance but Smith told her to forward her concerns directly to Waters who was directing Kippins' day to day activities to the extent they concerned Plotkins' care.  *Id.* ¶¶ 36, 47-8.  As instructed, Kippins contacted Waters and the following day, Plotkins received a new medication.  *Id.* ¶¶ 51-2.  Kippins alleges that she advised Smith about the new medication.  *Id.* ¶ 53.  Smith responded by sending her an email stating that she was not to handle or give clients their medications.  *Id.* ¶ 54.

That same day, Kippins learned that Plotkins had an issue with her morning companion.  *Id.* ¶ 36.  Although it is unclear if that issue involved the new medication, Kippins claims that she received a telephone call from Laura Giuntas ("Giuntas"), AMR's Outreach/Client Manager.  *Id.*

3

¶¶ 56-7.  Giuntas, who is Caucasian, presented herself as a staff nurse during that conversation.  *Id*. ¶ 58.  Giuntas asked Kippins to go to Plotkins' home and obtain information about the new medication.  *Id*. ¶ 59.  When she arrived at Plotkins' home, Giuntas told Kippins to open the boxes of medication and read to her the prescription while she waited on the phone.  *Id*. ¶ 60.  After she did so, Giuntas instructed Kippins on what medication to give to Plotkins.  *Id*. ¶ 62.  Despite the instruction from Giuntas, Kippins refused to handle the medication or feed it to Plotkins.  *Id*. ¶ 63.  In fact, Kippins alleges that Plotkins unwrapped the coil and fed herself the medication.  *Id*. ¶ 65.

Nonetheless, Kippins claims that later that day, Waters and Kippins exchanged several emails and spoke on the phone about the care Plotkins was receiving from other caregivers.  *Id*. ¶ 67.  Kippins alleges that Waters became belligerent during one of those conversations after she learned that Kippins had contacted Smith about her conversations with Waters and the medication issue.  *Id.* ¶ 69.  Kippins claims that Waters accused her of complaining to Smith and then called her as a "smart nigger."  *Id*. ¶¶ 70-1.  Kippins says she was shocked by the turn of events and reported the racial slur to Smith the following day.  *Id*. ¶¶ 73, 74.  On August 3, 2017, Kippins was terminated.  *Id*. ¶ 54.  No action was taken against Giuntas who allegedly had given Kippins instructions regarding Plotkins' medication.  *Id*. ¶ 92.  Kippins also claims she was replaced by a young Caucasian female from Adelphi University.  *Id*. ¶ 90.

      C.      **The EEOC Complaint**

According to the amended complaint, on April 27, 2018, Kippins filed a Notice of Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("the Notice").  *Id*. ¶ 4.  Although Kippins did not annex a copy of the Notice to the amended pleading or the papers she filed in opposition to the instant motion, a copy of the Notice was provided to the Court during the first round of motion practice.  That Notice is dated June 16, 2018.  ECF

4

No. 16-3. On the first page of the Notice, Kippins checked off the boxes indicating that she was discriminated against on the basis of race and was seeking relief under Title VII of the Civil Rights Act. *Id.* Kippins also attached a 43-paragraph statement of facts to the Notice prepared by her counsel that parrots many of the facts set forth in the amended complaint. *Id.* However, the Notice included two statements that are conspicuously absent from the amended complaint. Specifically, Kippins alleges that " at some point," Waters sent an email to AMR indicating that Kippins was "mentally unstable and should be fired." *Id.* Kippins further asserted that Waters email was an obvious attempt to defame her reputation." *Id.* Kippins received a right to sue letter on May 29, 2019. Am. Compl. ¶6.

### D. The Defendants' Contentions

As noted above, on June 26, 2020, the defendants filed a motion to dismiss the amended complaint. The crux of their renewed argument is that they are not liable for the racial slur or discriminatory acts of a third-party over who they had no control. Moreover, the defendants assert that Kippins' claim for retaliation fails as a matter of law because Waters' email to AMR stating that Kippins should be fired occurred after Kippins had complained about the racial slur, and thus, the complaint from their customer constitutes an intervening act that cut off any causal connection between the alleged protected activity and adverse employment action.

## DISCUSSION

### A. Standards of Law

In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *See Swiatkowski v. Citibank*, 745 F. Supp. 2d 150, 162 (E.D.N.Y. 2010), *aff'd,* 446 F. App'x 360 (2d Cir. 2011) (citing *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir.2010)). The Supreme Court clarified the appropriate pleading standard

5

in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), in which the court set forth a two-pronged approach to be utilized in analyzing a motion to dismiss. District courts are to first "identify [ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. "Though legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Second, if a complaint contains well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* " claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a [d]efendant has acted unlawfully." *Id*. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007) (internal citations omitted)).

  **B.**  **Kippins' Race Discrimination Claims**

  In their renewed motion, the defendants argue that Kippins' Title VII and state law race discrimination claims must be dismissed because they are solely based on Waters' racial slur, which cannot be imputed to them. Title VII prohibits an employer from discriminating against any individual "with respect to [his or her] compensation, terms, conditions or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. 2000e-2(a)(1); *see Richardson v. Commission in Human Rights & Opportunities*, 532 F.3d 114, 119 (2d Cir. 2008). Generally, race claims under Title VII and the NYSHRL are assessed using the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). *See Bowen-Hooks v. City of New York*, 13 F. Supp. 3d 179, 209 (E.D.N.Y. 2014); see also United States v. City of New York, 717 F.3d 72, 83–84 (2d Cir. 2013) (application of McDonnell Douglas framework to race discrimination claim). "However, '[t]he McDonnell Douglas test is

6

inapplicable where the plaintiff presents direct evidence of discrimination. To avoid the burden-shifting analysis, 'the plaintiff must be able to produce a 'smoking gun' or at least a 'thick cloud of smoke' to support [her] allegations of discriminatory treatment.'" *Short v. Fair Hous. Justice Cntr.*, 2012 U.S. Dist. LEXIS 184489 *50-1 (S.D.N.Y. Dec. 4, 2012) (*citing Raskin v. Wyatt Co.*, 125 F.3d 55, 61 (2d Cir. 1997) (internal citations omitted)). Here, Kippins has not presented the type of evidence needed to circumvent the *McDonnell Douglas* framework. Kippins' only allegation touching on direct discrimination is that, during a heated exchange, Waters called her a "smart nigger." Although the comment was certainly offensive, as will be discussed in greater detail below, the stray remark is far from a smoking gun. Accordingly, the Court must proceed with a *McDonnell Douglas* analysis.

Under the *McDonnell Douglas* framework, a plaintiff must first establish a *prima facie* case of discrimination. *Bowen-Hooks*, 13 F. Supp. 3d at 209. Specifically, a plaintiff must show that he or she (1) belonged to a protected class, (2) was qualified for the position he or she held or sought, (3) suffered an adverse employment action, and (4) did so under circumstances giving rise to an inference of discriminatory intent. *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003). If the plaintiff establishes a *prima facie* case, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. *Stratton v. Department for the Aging*, 132 F.3d 869, 879 (2d Cir. 1997). The employer's burden of showing a legitimate non-discriminatory reason for its actions is not a particularly steep hurdle. It is not a Court's role to second-guess an employer's personnel decisions, even if foolish, so long as they are non-discriminatory. *See Seils v. Rochester City Sch. Dist.*, 192 F. Supp. 2d 100, 111 (W.D.N.Y. 2002) (citing *Meiri v. Dacon*, 759 F.2d 989, 995 (2d Cir. 1985). Indeed, federal courts do not have a "roving commission to review business judgments," *see Mont. v. First Fed. Sav. & Loan Ass'n of Rochester*, 869 F.2d 100, 106 (2d Cir. 1989), and may not "sit as super personnel

7

departments, assessing the merits — or even the rationality — of employers' non-discriminatory business decisions." *Mesnick v. General Elec. Co.*, 950 F.2d 816, 825 (1st Cir. 1991). Thus, "[e]vidence that an employer made a poor business judgment generally is insufficient to establish a question of fact as to the credibility of the employer's reasons." *Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1116 (2d Cir. 1988).

If the employer establishes a legitimate nondiscriminatory reason for its actions, the *McDonnell Douglas* framework and its presumptions and burdens disappears, leaving the sole remaining issue of "discrimination *vel non*," and the burden shifts back to the plaintiff to prove that the employer's stated reason is merely pretextual and that discrimination was an actual reason for the adverse employment action. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000). In order to demonstrate that the employer's stated non-discriminatory reasons for the allegedly discriminatory action are pretextual, "[a] plaintiff is not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the motivating factors." *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 203 (2d Cir. 1995); *see Patterson v. County of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004). Finally, although intermediate evidentiary burdens shift back and forth under this framework, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *St. Mary's Honor Cntr. v. Hicks*, 509 U.S. 502, 507 (1993); *Norton v. Sam's Club*, 145 F.3d 114, 118 (2d Cir. 1998)("the thick accretion of cases interpreting the burden shifting framework should not obscure the simple principle that lies at the core of anti-discrimination cases . . . the plaintiff has the ultimate burden of persuasion). With these standards in mind, the Court addresses the sufficiency of Kippins' allegations of race discrimination.

In this case, the defendants contend that Kippins cannot meet her *prima facie* burden to support a claim for race discrimination. Kippins alleges she was wrongfully terminated because she is a black woman. Am. Comp. ¶ 101. However, the defendants argue that Kippins does not cite a single instance in which she was treated differently by Smith, her supervisor, or by Ann Retch ("Retch"), the owner of AMR, prior to the incident with Waters. Nevertheless, Kippins asserts that she was fired shortly after the racial slur made by Waters, who Kippins says was her supervisor. *Id*. ¶¶ 79-83. Kippins, therefore, asks the Court to conclude that her termination must have been based on race.

Since Kippins relies entirely on the offensive comment made by Waters, the Court begins its analysis by determining whether that comment can be imputed to the defendants. Courts in this Circuit "have previously held in the Title VII context that the conduct of certain non-employees may be imputed to [an] employer where (1) the employer exercises a 'high degree of control over the behavior' of the non-employee, and (2) the employer's 'own negligence' permits or facilitates that non-employee's discrimination." *Menaker,* 935 F.3d at 38–39. To be clear, Kippins does not allege that Waters was employed by AMR. Nor is there anything to suggest that AMR exercised a high degree of control of Waters. Kippins contends that as it concerned Plotkins, AMR gave Waters full authority to call the shots. *Id.* ¶¶ 39-40. Kippins has alleged just enough to leave open the possibility that AMR facilitated the discrimination by giving Waters both hiring, supervisory and even firing authority over Kippins and other AMR employees as it concerned Plotkins. *Id.* Kippins states that AMR allowed Waters to pay AMR employees directly, at least with respect to "additional services." *Id*. ¶¶ 38, 40. Kippins also alleges that she was told to address any concerns she might have about Plotkins' care directly to Waters. *Id.* ¶ 36. Finally, Kippins alleges that Waters determined when and what services were needed for Plotkin and often expressed dissatisfaction with the staff assigned to her care. In fact,

9

Kippins asserts that AMR allowed Waters to suspend other AMR employees. *Id.* ¶ 38. Finally, the complaint outlines that Kipling was fired shortly after reporting Waters racial comment which was done on Water's recommendation.

The Court finds that Kippins has set forth enough facts to establish her *prima facie* case of discrimination. It is possible that through discovery, the defendants will be able to establish that Waters was neither an AMR supervisor nor a co-employer. However, accepting the allegations in the amended complaint as true, Waters' conduct may be imputed to the defendants for the purpose of the discrimination claim. *C.f. Hylton v. Norrell Health Care*, 53 F. Supp. 2d 613, 618-19 (S.D.N.Y 1999) (employer nursing service not liable under Title VII for harassment of employee by patient's son); *Williams v. Astra USA, Inc.*, 68 F. Supp. 2d 29 (D. Mass. 1999) (employer not liable for the racially discriminatory acts of third parties over whom employer had no control or influence).

In addition, as indicated in its prior Report and Recommendation, the Court is not persuaded by the defendants' argument that the Water's email clearly proves that they had a legitimate, non-discriminatory reason for Kippins' termination in the context of a motion to dismiss. The allegations in this case make clear that Waters sent an email to AMR indicating that Kippins was "mentally unstable and should be fired." ECF No. 16-3. Indeed, Kippins acknowledges that the email was sent in an obvious attempt to defame her reputation. *Id*. Nonetheless, the timing or the email as it relates to Kippins' firing is unclear from the amended complaint. What is clear, however, is that Kippins was fired shortly after the racial remark was made. Again, "'[i]t is, . . . possible that the evidence will demonstrate that [AMR] had legitimate nondiscriminatory . . . reasons for its actions, that is an issue to be decided on summary judgment, not at the motion to dismiss stage.'" *Amador v. All Foods, Inc.*, No. CV 12-1715 SJF AKT, 2013 WL 1306305, at *8 (E.D.N.Y. Feb. 20, 2013), report and recommendation adopted,

No. 12-CV-1715 SJF AKT, 2013 WL 1282353 (E.D.N.Y. Mar. 27, 2013)(citing *Reynoso v. All Foods, Inc*., No. 12–CV–1714, 2012 WL 6093784, at *11 (E.D.N.Y. Dec. 7, 2012)). Accordingly, the Court finds that Kippins has adequately stated a claim for race discrimination and recommends that the defendants' motion to dismiss her Title VII and NYSHRL discrimination claims be denied.[1]

## C. Kippins' Retaliation Claims

The Court, similarly, finds Kippins' Title VII and NYSHRL retaliation claims to be sufficient. To establish a *prima facie* case of retaliation, a plaintiff must show that: (1) she participated in an activity protected under Title VII; (2) the employer was aware of her participation in the protected activity; (3) the employer took adverse action against her based on his protected activity; and (4) there was a causal connection between the protected activity and the adverse action taken by the employer. *See Kessler v. Westchester County Dep't of Social Servs*., 461 F.3d 199, 206 (2d Cir. 2006). The "protected activity" element of a retaliation case turns upon whether the employee has protested an unlawful employment practice, within the meaning of Title VII. *Wimmer v. Suffolk Co. Police Dep't*, 176 F.3d 125, 135, (2d Cir. 1999). As explained above, the unlawful employment practice about which Kippins complained was a racial slur made by Waters. Am. Compl. ¶¶ 74-78. Notably, Kippins need not prove that the conduct about which she protested actually amounted to a violation of Title VII, Kippins must

---

[1] Given the Court's findings, the undersigned need not address whether the allegations are sufficient to support a finding that the alleged nondiscriminatory reason for terminating Kippins' employment was pretextual. However, it warrants mention that the fact that Giuntas was not reprimanded for her role in the medication incident or that Kippins was replaced by a white employee is, alone, insufficient to establish a prima facie case of discrimination with respect to her termination or to support a finding that the defendants' alleged nondiscriminatory reason for terminating her employment was pretextual. *See Jackson v. Citiwide Corp. Transp., Inc*., 2004 WL 307243, at *4 (S.D.N.Y. Feb. 17, 2004) (employer established legitimate, non-discriminatory reason for discharging employee where one of defendant's customers had complained that plaintiff was rude and refused to have future dealings with plaintiff); *Dabney v. Christmas Tree Shops*, 958 F. Supp. 2d 439, 453 (S.D.N.Y. 2013), aff'd *sub nom. Dabney v. Bed Bath & Beyond,* 588 F. App'x 15 (2d Cir. 2014); *Farina v. Branford Bd. of Educ.,* No. 09–CV–49, 2010 WL 3829160, at *6 (D. Conn. Sept. 23, 2010) (replacement by someone outside class is not sufficient in and of itself to show pretext), *aff'd,* 458 Fed. Appx. 13 (2d Cir. 2011).

11

only demonstrate a good faith, reasonable belief that the underlying challenged actions of the employer violated the law. *See Wimmer v. Suffolk Cty. Police Dep't*, 176 F.3d 125, 134 (2d Cir. 1999).

In their moving papers, the defendants do not discuss whether Kippins' believed in good faith that Water's comment subjected her to an unlawful employment practice under the statute. Rather, the defendants seek to dismiss the retaliation claim on the ground that Waters' complaint to AMR was an intervening causal event. *See Garcia v. Yonkers Bd. of Educ.*, 2018 WL 4007648, at *7 (S.D.N.Y. Aug. 21, 2018). As stated above, the Court cannot consider this argument on the motion to dismiss as the timing of the email complaint by Waters to AMR is not clear from the allegations. Therefore, the undersigned also recommends that the defendants motion with respect to Kippins' retaliation claims also be denied.

## OBJECTIONS

A copy of this Report and Recommendation is being electronically served by the Court on the parties. Any objections to this Report and Recommendation must be filed with the Clerk of the Court with a courtesy copy to the undersigned within 14 days. Failure to file objections within this period waives the right to appeal the District Court's Order. See 28 U.S.C. § 636(b)(1); Fed R. Civ. P 72; *Mejia v. Roma Cleaning, Inc.*, No. 17-3446, 2018 U.S. App. LEXIS 28235, 2018 WL 4847199, at *1 (2d Cir. Oct. 5, 2018) ("Plaintiff has waived any objections to the Magistrate's finding" by failing to timely object); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010); *Beverly v. Walker,* 118 F.3d 900, 902 (2d Cir. 1997).

Dated: Central Islip, New York
      January 22, 2021                                   /s/
                                                                ARLENE R. LINDSAY
                                                                United States Magistrate Judge